UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Shimon Halberstam, as Trustee of the Zupnick Family Trust 2008 B, <br><br> *Plaintiff*, <br><br> – against – <br><br> Allianz Life Insurance Company of North America, <br><br> *Defendant*. | 1:16-CV-6854 (ARR) (ST) <br><br><br> **Not for Publication** <br><br><br> **Opinion & Order** |

ROSS, United States District Judge:

The plaintiff in this case is suing for a declaratory judgment that a certain life-insurance policy, issued by the defendant and owned by a trust of which the plaintiff is both trustee and beneficiary, is in force. In a previous opinion, I found that the plaintiff was entitled to summary judgment, provided that "the trust . . . become current on its premium obligations." *Halberstam v. Allianz Life Ins. Co. of N. Am.*, No. 1:16-CV-6854 (ARR) (ST), 2018 WL 4762253, at *9 (E.D.N.Y. Oct. 2, 2018). And I ordered the parties "to determine the amount of premium now owed under the policy." *Id.* Having failed to agree on the methodology for doing so, the parties have returned to this court for further direction.

## BACKGROUND

The facts of this case are set forth in my previous opinion, and I will not dwell on them herein. It suffices for present purposes to explain that the life-insurance policy at issue "does not simply require a fixed premium payment each month" but instead "provides a policy owner flexibility to determine certain aspects of coverage, including the timing and amount of premiums it will submit to Allianz within limits set by the terms of the Policy." *Id.* at *1 (quoting Def.'s 56.1 Statement ¶ 6, ECF No. 48-2).

1

Under its terms, the policy remains in force as long as at least one of three different monthly tests, each based on the amount of premium paid by the policyholder, is met. *See id.* at *1–2. If all three tests ever fail at the same time, the policy enters a sixty-one-day grace period, during which the policyholder must make "[a] premium payment sufficient to keep [the] policy in force for three months" from the date that the tests all failed; otherwise, the policy lapses. Policy 28, ECF No. 61-1;[1] *see Halberstam*, 2018 WL 4762253, at *1, *4. The parties agree that only one of the three tests is at issue in the present dispute. *See* Pl.'s Br. 4, ECF No. 62; Petit Decl. ¶ 5, ECF No. 60.

Under that one test, "the policy remains in force as long as the policyholder . . . maintain[s] a positive balance in a 'side account,'" whose balance is recalculated monthly based on the previous month's balance, the premium paid that month, and a number of other variables that are defined in a policy rider. *Halberstam*, 2018 WL 4762253, at *2; *see* Policy 10–12, 22–23. Per the terms of the rider, the value of the side account grows at a high interest rate, which incentivizes the policyholder to make substantial premium payments early on rather than continually funding the policy with the least premium possible. *See* 2d Petit Decl. ¶ 10, ECF No. 64. Nevertheless, the specific policy at issue here entered a grace period eight different times between its issuance in 2008 and the purported lapse in 2012 that precipitated this lawsuit. *See Halberstam*, 2018 WL 4762253, at *2. The last such grace period began on July 7, 2012 (*see id.*), and no premium payments have been made since (*see* Policy History, ECF No. 61-2).

---

[1] Because this document is inconsistently paginated, I use the page numbers assigned by the ECF system.

# DISCUSSION

## A. The Amount of Premium Owed

The question now is how much premium the trust should have to pay in order to be deemed current on the life-insurance policy. The defendant argues that that question is readily answerable under the terms of the policy: the trust should have to pay as much premium as is currently needed for the side account to attain a positive balance. *See* Def.'s Opp'n 2–3, ECF No. 63. The plaintiff, by contrast, argues that the trust should only have to pay as much premium as would have been needed in 2012 to keep the side account in the black until the present. *See* Pl.'s Br. 6–7, 10. The logic of the plaintiff's argument is that the trust should not be penalized for failing to pay premiums since 2012 when "the only reason premiums were not paid since then was because Allianz wrongfully declared the Policy lapsed." Pl.'s Reply 1, ECF No. 67. But the defendant counters that the plaintiff should not receive the windfall of a fictional 2012 multimillion-dollar premium payment that would never have occurred in reality. *See* Def.'s Reply 4–5, ECF No. 68. Both parties' arguments are persuasive, so I look for a third, fairer option.

In doing so, I rely on basic principles of contract-law remedies. One such "'general principle' of contracts is that recovery for breach of contract should put the injured party 'in as good a position as he would have occupied had the contract been kept.'" *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 424 (S.D.N.Y. 2004) (quoting *Menzel v. List*, 246 N.E.2d 742, 745 (N.Y. 1969)). Under New York law, the court's object in remedying a breach of contract is typically to "return the plaintiff, as nearly as possible, to the position it would have been in had the wrongdoing not occurred—but do no more." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 304 (N.Y. 2018); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003) ("Under New York law, damages for breach of

contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract."). As a result, "revenues due a plaintiff because of a breached contract must be offset by any amount plaintiff saved as a result of the breach." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995).

Application of these principles to the facts at hand demonstrates why neither party's chief proposal can be accepted. Had the defendant not breached the contract, the trust would have continued to make sporadic premium payments, and the policy would have remained in force. Putting the plaintiff in the position that he would have occupied thus requires not only declaring that the policy is in force but also requiring the trust to hand over premium payments equivalent to the amount that the trust would have paid. Yet the defendant's proposal would certainly have the trust paying more now than it would have paid over the past six years, thus disadvantaging the plaintiff vis-à-vis where he would have found himself had the defendant not breached. *See* 2d Petit Decl. ¶¶ 5–7. And just the same, the plaintiff's proposal would unquestionably put the plaintiff in an even better position than he would have held absent the breach. *See* Pl.'s Br. 8; Pl.'s Opp'n 5, ECF No. 66.

The defendant argues that it would be "inappropriate" to issue an order "based upon the factually unsupportable assumption that the [trust] would have made premium payments in any discernable pattern." Def.'s Br. 2, ECF No. 59. While it's certainly true that the trust's payment history was erratic (*see* Policy History), there was pattern enough to the trust's payments for the court to estimate what would have been paid after 2012. *Cf. Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) ("'The plaintiff need only show a stable foundation for a reasonable estimate' of the damage incurred as a result of the breach." (internal quotation marks omitted) (quoting *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d. Cir. 1977))). And the defendant does not dispute that my task is

4

to "place the parties in the position they would have been in, *as close as possible*, had Allianz not declared the Policy to have lapsed in September 2012." Def.'s Br. 3–4 (emphasis added).

Based on my review of the record, I find that the trust's payments roughly followed a particular pattern: the trust would make minimal payments until the policy entered a grace period, at which time the trust would make a sufficiently large payment to prevent the policy from lapsing. Indeed, despite suggesting that there was no "discernable pattern" of payments, the defendant's own briefing describes this pattern accurately and repeatedly. *See, e.g.*, Def.'s Br. 2 (arguing that it's "undisputed" that "the Policy's owner consistently paid the minimum amounts needed to keep the Policy in force"); *id.* at 3 ("[T]he Policy's owner consistently paid the minimum amount needed to keep the Policy in force, allowing the Policy to enter a grace period on eight separate occasions to delay the need to pay any premium for as long as possible."); Def.'s Opp'n 12 (noting trust's "pattern of never paying any premium amounts in advance of when they were needed to keep the Policy from lapsing"); *id.* at 15 ("It is apparent . . . that most if not all of the large premium payments were made only because they were necessary to avoid lapse . . . ."); *id.* at 16 ("[P]remium payments . . . were paid only when absolutely necessary to save the Policy from lapsing . . . ."). And the defendant's actuary agrees. *See* Petit Decl. ¶ 4 (stating that payment history "demonstrates that this policy owner had decided to minimally fund the Policy, and to pay premium as infrequently and in as low amounts as possible to keep the Policy in force"); *id.* ("This premium payment pattern is characteristic of someone paying the absolute minimum premium necessary to prevent the lapse of a policy."); 2d Petit Decl. ¶ 10 ("[T]he actual premium paid on this Policy in the first 4 years reflects that the Plaintiff-owner . . . paid the bare minimum necessary to meet the Guaranteed Death Benefit test.").

Both parties acknowledge that, had the defendant not breached the contract, the most likely scenario would have been a continuation of the same pattern of payments. *See* Pl.'s Opp'n 5 ("[I]t is likely that payment would have continued in the same pattern, roughly once every two or three months."); Def.'s Reply 4 ("[T]he undisputed fact record demonstrates that . . . it is most likely that plaintiff would have deliberately failed to pay premium and allowed the Policy to enter grace periods repeatedly."). That, then, is our answer.

The amount of premium that the trust has to pay now is the amount that the trust would have paid if the trust had, from 2012 up through today, continually paid nothing until the policy entered a grace period and only then paid the least premium possible, on the last day possible, to keep the policy from lapsing.[2]

### B. Ancillary Matters

In the interest of the expeditious resolution of this case, and to avoid any further dispute between the parties, I take the time to clarify a few other matters.

First, the defendant notes that it has missed out on "the benefit of having been able to earn investment income on the premium" that would have been paid over the past six years. Def.'s Br. 4. That is the sort of loss that can be remedied by an award of prejudgment interest. *See, e.g.*, *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) ("Under New York law, . . . a plaintiff who prevails on a claim for breach of contract is

---

[2] This amount will presumably differ somewhat from the payment scenario that the defendant first presented in its opposition papers. *See* Def.'s Opp'n 13. As explained by the defendant's actuary, that scenario was based on the trust having "paid the Minimum Monthly Premium amount" between 2012 and 2018 (2d Petit Decl. ¶ 7), and it appears to assume *monthly* premium payments (*see id.* at 3 (table)). By contrast, the scenario that I am describing assumes that payments would have been made only when the policy had entered the grace period and was about to lapse, rather than every month. That said, both scenarios are based on the same essential logic: "plaintiff paying the minimum amounts necessary under the Rider to keep the Policy from lapsing" (Def.'s Reply 5 n.11).

6

entitled to prejudgment interest as a matter of right."). The problem for the defendant, of course, is that it is the one who breached the contract. I thus decline to compensate the defendant for the lost opportunity to earn interest. *Cf. Rubenstein v. Lincoln Nat'l Life Ins. Co.*, No. 501605/2012, 2014 N.Y. Misc. LEXIS 3327, at *4–5 (Sup. Ct. July 25, 2014) (observing that inclusion of "fees and interest" in calculation of "unpaid premiums" "may not be appropriate since the lapse was initially brought on by the defendant").

Second, the plaintiff points out that, under the terms of the policy, any aggregate premium payments that surpass $555,600 in any given year have a diminished effect on the balance in the side account, thus requiring the plaintiff to pay relatively more premium to keep the policy in force. *See* Pl.'s Br. 2, 5. The plaintiff argues that, had the contract not been breached, he would never have paid that much premium in any one policy year, and so that term—called Premium Factor B—should be read out of the policy for the purpose of calculating the amount of premium due now. *See id.* at 11; *see also* Policy 10, 22. The defendant apparently concedes that this "higher premium factor is designed to come into play mainly when a policy owner funds a policy in an amount that is substantially greater than the minimum monthly premium rate, and the trust never funded this Policy in that manner." Def.'s Opp'n 10. Accordingly, under the payment scenario that I have outlined above—designed to re-create the trust's actual payment history—it may be that this term of the policy will simply not come into play. If it does, however, it should be factored into the calculations just as it would have been had the payments been made over the six years in question. I will not "re-write the premium calculation formula" of the policy (Def.'s Reply 3–4).

And third, the parties have failed to agree on which target date the premium calculation should be based on. *Compare* Petit Decl. ¶ 6 (noting that defendant's calculations

were designed to carry policy until December 7, 2018), *with* Pl.'s Reply 5 (stating that plaintiff's calculations were designed to carry policy until January 2019). The parties are welcome to use any target date on which they can agree. But if they cannot agree, they are instructed to calculate the amount of premium that would need to have been paid to keep the policy from *lapsing* no sooner than March 7, 2019.

## CONCLUSION

For the foregoing reasons, the parties are directed to make a good-faith effort to determine the amount of premium owed under the scenario and conditions that I have described above. The parties are directed to inform the court of that amount within thirty days of this order.

So ordered.

/s/
Allyne R. Ross
United States District Judge

Dated:     December 19, 2018
           Brooklyn, New York